**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTIAN ENRIQUE CARIAS TORRES,<br><br>    Defendant. | Case No. 1:25-mj-146-MJS |

## <u>MEMORANDUM OPINION AND ORDER</u>

In August 2025, Christian Enrique Carias Torres was charged with one count of assaulting, resisting, or impeding federal officers in violation of 18 U.S.C. § 111(a)(1). Less than three weeks later, the U.S. Attorney's Office for the District of Columbia moved to dismiss the case with prejudice. The Court granted the motion and closed the case. Carias Torres now moves for the expungement of his arrest record (ECF No. 12), which the government opposes. Because Carias Torres has not established a basis for expungement, the Court **DENIES** the motion.

## BACKGROUND

Given this case's short-lived procedural history, the Court summarizes the background as described in the government's sworn affidavit in support of the criminal complaint.[1]

On the morning of Saturday, August 16, 2025, a group of (masked) Immigration and Customs Enforcement ("ICE") officers approached Carias Torres while he was walking from a coffee shop in Northwest, Washington, D.C. to a parked scooter. (*See* ECF No. 1-1 at 1.)

---

[1] That said, the Washington Post—among other news outlets—reported on the underlying encounter and published at least some bystander video footage. *See, e.g.*, Dan Rozenzweig-Ziff, et al., *Federal officers detain, tackle moped driver amid Trump D.C. police crackdown*, Wash. Po. (Aug. 17, 2025), *available at* https://www.washingtonpost.com/dc-md-va/2025/08/17/dc-arrests-violent-takedown-immigration.

According to the government's brief, the officers had previously observed Carias Torres "operating [the] moped" and "making a traffic violation" before "parking along the curbside[,]" although the precise nature of the alleged traffic violation remains unsaid. (ECF No. 13 at 1.)

In any event, Carias Torres reportedly tried to flee on foot when the officers approached. (ECF No. 1-1 at 1.) The officers grabbed him, and, during the ensuing struggle, Carias Torres is alleged to have kicked his right leg backwards, striking one of the officers. (*Id.*) The officers then tased Carias Torres, and he fell to the ground. (*Id.* at 2.) Carias Torres continued to struggle and got back to his feet, at which point he pushed against the officers and reportedly caused the group to fall backwards. During the fall, one of the ICE officers struck his head on the pavement. (*See id.*) The officers then tased Carias Torres again and ultimately secured him in a vehicle. (*Id.*) Several of these moments are depicted in video stills included in the affidavit. (*See id.*)

From the scene, officers transported Carias Torres to an ICE facility in Chantilly, Virginia for immigration processing. As the government reports, Carias Torres, a citizen of Venezuela, was subject to a removal order issued by an immigration judge. (*See* ECF No. 13 at 2.)[2]

Two days later, on August 18, 2025, the government formally charged Carias Torres by criminal complaint with one count of assaulting, resisting, or impeding federal officers in violation of 18 U.S.C. § 111(a)(1)—a felony offense, at least as charged, with a possible punishment of imprisonment for up to eight years. On August 20, 2025, Carias Torres was presented in federal court for his initial appearance, at which time the government moved to detain him pending trial. The Court held a detention hearing on August 25, 2025, and Judge Zia M. Faruqui denied the government's motion and ordered that Carias Torres could be released on conditions, including home detention, GPS monitoring, and other restrictions. (*See* Min. Entry, Aug. 25, 2025; *see also*

---

[2] To be clear, there is no suggestion that the ICE officers knew this fact at the time they approached Carias Torres that Saturday morning, or even that they had any particularized suspicion to that effect.

ECF No. 9.) The Court's release order was contingent, though, on Carias Torres's release from ICE custody.[3] The Court also set a preliminary hearing for September 8, 2025.

On September 5, 2025—the Friday before the scheduled preliminary hearing—the government filed a one-sentence motion to dismiss the case against Carias Torres with prejudice. (ECF No. 10.) The Court granted the motion on September 8, 2025. (ECF No. 11.)[4] Carias Torres then filed the instant motion to expunge, which the government timely opposed. (ECF Nos. 12, 13.) The government reports that shortly after the dismissal of this case, the government carried out the immigration court's removal order and removed Carias Torres to Venezuela.

## DISCUSSION

The D.C. Circuit has long recognized "that courts have the inherent, equitable power to expunge arrest records." *Livingston v. U.S. Dep't of Just.*, 759 F.2d 74, 78 (D.C. Cir. 1985). On the record presented here, though, Carias Torres comes up short in demonstrating any circumstances that would warrant the Court's invocation of that power. Before explaining why, the Court first addresses a threshold question of its own authority to resolve this motion.

---

[3] As a practical matter, then, Carias Torres remained in custody, albeit with ICE and not the U.S. Marshals.

[4] The government's charge-then-dismiss approach was not unique to this case. As part of the federal policing "surge" in Washington, D.C. throughout August and September 2025, the U.S. Attorney's Office frequently charged similar violations of 18 U.S.C. § 111(a). In many of those cases, after charging and arresting the defendants—and often incarcerating them for days (and sometimes longer)—the government ended up dismissing the charges just before a scheduled preliminary hearing. *See, e.g.*, *United States v. Summers*, No. 25-mj-144 (D.D.C.); *United States v. Allen*, No. 25-mj-145 (D.D.C.); *United States v. Esquivel*, No. 25-mj-162 (D.D.C.); *United States v. Pichon*, No. 25-mj-167 (D.D.C.); *United States v. Nguyen*, No. 25-mj-170 (D.D.C.); *United States v. Meath*, No. 25-mj-180 (D.D.C.); *United States v. McIntyre*, No. 25-mj-185 (D.D.C.); *United States v. Tyree*, No. 25-mj-195 (D.D.C.); *United States v. Byrd*, No. 25-mj-208 (D.D.C.). In still other cases, the government charged individuals with violations of Section 111(a), only to dismiss the cases before they were arrested or presented on the charges. *See, e.g.*, *United States v. Jeffery*, No. 25-mj-177 (D.D.C.); *United States v. Lagunas*, No. 25-mj-178 (D.D.C.).

## I.    Magistrate Judge Jurisdiction Over Expungement of Arrest Records

"Magistrate judges' power comes from statutory, rather than constitutional, sources," *United States v. Stewart*, 810 F. Supp. 3d 65, 69 (D.D.C. 2025)—chief among them, 28 U.S.C. § 636. Magistrate judges are expressly empowered, for example, to issue orders concerning pretrial release or detention under 18 U.S.C. § 3142, to conduct trials in misdemeanor criminal cases with consent in keeping with 18 U.S.C. § 3401, to sentence for petty offenses, and more. *See id.* § 636(a). Further, district judges "may designate a magistrate judge to hear and determine any pretrial matter pending before the court," except for some enumerated matters. *Id*. § 636(b)(1)(A). In keeping with that statutory authorization, our District's Local Rules specifically vest magistrate judges with a range of powers and responsibilities in criminal proceedings, including, as relevant here, the power to "[i]ssue arrest warrants … for violations of the United States Code." D.D.C. LCrR 57.17(a)(2). Although no specific statute or rule authorizes the *expungement of* arrest warrants, the lack of such an express authorization does not necessarily foreclose it. After all, by statute, magistrate judges "may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3).[5]

Against that backdrop, another member of this Court recently concluded that magistrate judges wield the statutory authority to expunge arrest warrants. As Judge Faruqui persuasively reasoned, the "judicial authority to act carries with it the corollary power to undo the act." *United States v. Riley*, 806 F. Supp. 3d 38, 43 (D.D.C. 2025). And so, "[b]ecause magistrate judges have the authority to issue an arrest warrant in the first place, they also have the authority to wipe that

---

[5] "The generality of the category of 'additional duties' indicates that Congress intended to give federal judges significant leeway to experiment with possible improvements in the efficiency of the judicial process[.]" *Peretz v. United States*, 501 U.S. 923, 932 (1991). That said, "[a]ny additional duties performed pursuant to [that] general authorization in the statute reasonably should bear some relation to the specified duties" assigned by statute. *Id.* at 930 (citing *Gomez v. United States*, 490 U.S. 858, 863–64 (1989)).

arrest warrant from the record." *Id.* The undersigned agrees. The power to expunge an arrest record in this context falls comfortably within the range of "additional duties" contemplated by Section 636(b)(3). It reasonably bears "some relation to the specified duties" that the statute assigns to magistrate judges, *Gomez*, 490 U.S. at 864—namely, the power to issue the arrest warrant at the outset. And more, this construction adheres to the "leeway" the Supreme Court encouraged in demarcating the bounds of proper "additional duties" under the statute, with an eye toward "improv[ing] the efficient administration of the courts' dockets." *Peretz*, 501 U.S. at 932, 934.

At least a few other cases applied this same overall logic in concluding that magistrate judges can expunge even criminal *convictions*—not merely *arrest warrants*—in misdemeanor cases where the magistrate judge presided over the case by consent and imposed the resulting sentence. *See United States v. Steelwright*, 179 F. Supp. 2d 567, 572 (D. Md. 2002) ("The authority to order expungement … is a natural extension of the magistrate judge's authority to sentence in the first place where the defendant has consented to such."); *United States v. Vasquez*, 74 F. Supp. 2d 964, 967 (S.D. Cal. 1999) ("The authority of the magistrate judge to order expungement of a misdemeanor conviction record is thus implicit in the authority to enter the conviction in the first place."); *United States v. Loiseau*, 2022 WL 780728, at *2 (D. Vt. Mar. 15, 2022) (similar). In other words, those courts acknowledged the same give-and-take principle animating the Court's determination here: the power to "do" naturally encompasses the power to "undo."

Simply put, the Court concludes that it is empowered to expunge an arrest warrant. The Court turns next to the question of whether it should do so in this specific case.

## II.    Expungement Is Not Warranted On This Record

There is "no 'standalone right to expungement of government records' … recognized in this Circuit." *United States v. Douglas*, 282 F. Supp. 3d 275, 278 (D.D.C. 2017) (quoting

5

*Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 536 (D.C. Cir. 2015)). Instead, "[t]he court may order expungement where it is required or authorized by statute, or in exercise of its inherent equitable powers." *United States v. Derouen*, 279 F. Supp. 3d 298, 299 (D.D.C. 2018) (citing *United States v. Archer*, 2012 WL 5818244, at *1 (D.D.C. Nov. 13, 2012)). The Court's inherent powers are typically invoked only in cases that present evidence of "a lack of probable cause coupled with specific circumstances, flagrant violations of the Constitution, or other unusual and extraordinary circumstances." *Doe v. Webster*, 606 F.2d 1226, 1230 (D.C. Cir. 1979); *United States v. Blackwell*, 45 F. Supp. 3d 123, 124 (D.D.C. 2014) (same).

The concept of "extraordinary circumstances" is a "nebulous" one in this context. *See Riley*, 806 F. Supp. 3d at 44 (citing *United States v. McKnight*, 33 F. Supp. 3d 577, 584 (D. Md. 2014)). But courts have opined that such circumstances "most clearly exist in cases where the underlying arrest or conviction was unlawful and/or unconstitutional, government misconduct is alleged, or the statute on which the arrest was based is subsequently found unconstitutional." *Id.* As the D.C. Circuit has described the "general rule," the "expungement of an arrest record is appropriate when serious governmental misbehavior leading to the arrest, or unusually substantial harm to the defendant not in any way attributable to him, outweighs the government's need for a record of the arrest." *Doe*, 606 F.2d at 1231.[6]

Here, Carias Torres does not invoke any specific statutory authority in support of expungement. Instead, he asks the Court to exercise its inherent equitable powers. His motion

---

[6] The government has a legitimate interest in maintaining arrest records, including for future "investigative and other law enforcement purposes." *Doe*, 606 F.2d at 1241, 1243; *United States v. Woods*, 313 F. Supp. 3d 197, 200 (D.D.C. 2018) ("The government has both the statutory authority to maintain criminal records and a demonstrated need to do so in order to conduct future criminal investigations efficiently."); *United States v. Hall*, 2020 WL 1286386, at *3 (D.D.C. Mar. 18, 2020) ("Retaining and preserving arrest records serves the important function of promoting effective law enforcement and serves the compelling public need for an effective and workable criminal identification procedure.") (cleaned up).

argues that the "over-the-top arrest was unlawful and for harassment, the facts are extraordinary, and equitable considerations require expungement." (ECF No. 12 at 2.) Beyond generalizations, though, Carias Torres neglects to really develop these points any further. The Court acknowledges that the events surrounding law enforcement's encounter with Carias Torres—and similar events during the timeframe of the "surge"—drew a certain amount of public backlash from the media and the community. And if the government had chosen to press forward with its prosecution of Carias Torres, it is certainly conceivable that its theory of the case might have met defeat in front of a jury. *See, e.g.*, *United States v. Reid*, No. 25-cr-244, ECF No. 70, Verdict Form (D.D.C. Oct. 16, 2025) (rendering "not guilty" judgment in case involving similar charges under 18 U.S.C. § 111(a)); *United States v. Dunn*, No. 25-cr-252, ECF No. 50, Verdict Form (D.D.C. Nov. 6, 2025) (same). But the Court cannot say—at least not without a more developed record—that the arrest here was unlawful or so patently infected by government misbehavior as to justify expungement. After all, another magistrate judge reviewed and approved this criminal complaint as supported by probable cause. And even though the timing of the government's dismissal deprived Carias Torres of an opportunity to challenge the government's evidence through a preliminary hearing, the Court needs more than counsel's contrary say-so to reach a different conclusion at this juncture. This does not mean the Court endorses every aspect of the way that law enforcement, including the masked ICE officers on the scene that morning, proceeded in the lead up to these proceedings. But there is a high bar to secure expungement, and Carias Torres simply has not cleared it.

A few additional points. One, although Carias Torres does not rely on the *Riley* case in seeking relief—presumably because that ruling was issued after he filed his motion—the Court independently considered it. *Riley* expunged the defendant's arrest record on firearms charges after ruling that the search leading to the recovery of the offending firearm was "illegal," based on a

more developed record and analysis than presented here. *See Riley*, 806 F. Supp. 3d at 44–46. Because Carias Torres neglects to present any similarly developed argument, the *Riley* case does not sway the Court's conclusion.

Two, the other cases Carias Torres relies upon are inapposite because the government did not oppose expungement in those matters. *See McKnight*, 33 F. Supp. 3d at 584–85, 588 ("Finally and critically, the Government did not oppose the expungement on any grounds[.]"); *United States v. Bohr*, 406 F. Supp. 1218, 1219 (E.D. Wis. 1976) (similar). The same is not true here.

And last, to the extent Carias Torres says expungement is justified because the government opted to dismiss the case *with prejudice* (an admittedly unusual step), that categorical argument comes up short. *See Livingston*, 759 F.2d at 78 n.30 ("Dismissal of the complaint, without more, will not justify expungement of the arrest record."). To hold otherwise would disincentivize the government from seeking dismissal with prejudice in appropriate cases. And here, the government explains that its request to dismiss *with prejudice* was motivated by the fact that it understood Carias Torres was likely to be removed to his home country of Venezuela in keeping with an existing removal order, such that "it was in the interest of justice to not pursue this matter further[.]" (ECF No. 13 at 5.) So, while not necessarily an irrelevant consideration altogether, the Court disagrees that expungement is warranted any time the government dismisses with prejudice.

## CONCLUSION

For the above reasons, the Court **DENIES** the motion for expungement.


Dated: May 22, 2026

          MATTHEW J. SHARBAUGH
          United States Magistrate Judge

8